# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ALLEN WOLFSON, | ) | |
| Reg. No.03430-018 | ) | |
| FMC Butner 2H | ) | |
| P.O. Box  1600 | ) | |
| Butner, NC  27509 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  09-CV-0304 (ESH) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE OFFICE OF | ) | |
| INFORMATION AND PRIVACY | ) | |
| | ) | |
| Defendants. | ) | |

_____

## DEFENDANTS' MEMORANDUMRANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

Plaintiff in this action is federal inmate Allen Wolfson, federal register number 03430-018.  In 2005 he sought information about himself from the Criminal Division of the United States Department of Justice ("DOJ").  Dissatisfied with redactions and withholdings in the agency's final response, Plaintiff filed an administrative appeal with the Office of Information and Privacy ("OIP").  OIP affirmed the Criminal Division's final decision and Plaintiff filed this lawsuit.

### II.  Facts

On September 1, 2005, the Criminal Division's FOIA/PA Unit received Plaintiff's August 25, 2005, "Privacy Act Identification and Request Form" seeking records

concerning himself.  Exhibit 1.  Plaintiff also included the "Criminal Division's List of Systems of Records Form" on which he indicated the systems of records maintained by the Criminal Division that he wanted searched.  Roberts Decl. ¶ 4.  By letter addressed to the Plaintiff dated September 22, 2005, the Criminal Division acknowledged receipt of Plaintiff's request.  The Plaintiff's FOIA/PA request was assigned case number CRM-200500908P.[1]  Id. ¶ 5.  The Plaintiff was advised that the FOIA/PA Unit would conduct a search to determine what records the Criminal Division had that were within the scope of the request.  Exhibit 2.

By letter dated June 16, 2008, the FOIA/PA Unit responded to Plaintiff's Privacy Act request of August 25, 2005, for access to records in his name and informed him that sixteen Criminal Division records (Items 1-16) within the scope of his request were located.  Roberts Decl. ¶ 6.  Of the 16 items, Items 1-5 were released in full and Items 6-14 were released in part.  Id.  Copies of these items were attached to the Department's letter to Plaintiff.  Items 15 and 16 were withheld in full.  Id.  Material was withheld in part from Items 6-14 and in full from Items 15-16 pursuant to Exemptions 3, 5, 6, 7(C) and 7(D) of the FOIA (5 U.S.C. § 552(b)(3), (5), (6), 7(C) & 7(D)).  Id.  Plaintiff was advised that a record that originated with the Federal Bureau of Investigation ("FBI") was referred to that Office for processing and a direct reply to Plaintiff.  Id.  The letter also informed Plaintiff of his right to an administrative appeal.  Exhibit 3.[2]

Plaintiff appealed the Criminal Division's response of June 16, 2008, to the Office

---

[1] In his complaint, Plaintiff mistakenly refers to the number assigned to his request as "CRM-200700908P."  See Complaint, page 3.  The correct number is "CRM-200500908P."

[2] Upon further review, the redactions to Items 12-14 to excise certain initials and employee names have been removed and these items have been released in full and attached to Exhibit 3.

of Information and Privacy ("OIP").  By letter dated July 10, 2008, OIP acknowledged

receipt of the appeal.  Exhibit 4.  By letter dated September 23, 2008, OIP responded to

Plaintiff's appeal and affirmed the Criminal Division's action on his request.  Exhibit 5.

### III. Argument

#### a.  Legal Standard for Summary Judgment

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that

'there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.'" *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 154 (D.C.Cir. 2007) *quoting*

Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial responsibility of

showing an absence of a genuine issue of material facts.  *Id.*  In deciding whether a genuine issue

of material facts exists, the court must "accept all evidence and make all inferences in the non-

movant's favor."  *Id.*, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "A non-

moving party, however, must establish more than the mere existence of a scintilla of evidence in

support of its position."  *Id.* (citations and internal quotation marks omitted).  That is, "'[i]f the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted.'"  *Id.*, *quoting Anderson,* 477 U.S. at 249-50.

In particular with regard to FOIA claims, this Court has recently noted the following:

> The court's jurisdiction under the FOIA extends only to claims
> arising from the improper withholding of agency records.
> *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (*quoting
> Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S.
> 136, 150 (1980)).  In a FOIA suit, an agency is entitled to summary
> judgment once it bears its burden of demonstrating through
> reasonably detailed affidavits or declarations that no material facts
> are in dispute and its disclosure determinations satisfied the statute.
> *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.
> 1981) (citations omitted). To challenge such a showing, the non-
> moving party "must set out specific facts showing a genuine issue
> for trial." Fed. R. Civ. P. 56(e).

3

*Barbosa v. DEA*, 541 F. Supp. 2d 108, 110 (D.C. Cir. 2008) (granting summary judgment in

agency's favor); *see also Singh v. FBI*, 574 F. Supp. 2d 32, 38-40 (D.C. Cir. 2008).  Applying

this standard it is clear that the Court should enter summary judgment in Defendants' favor.

### b.  The Agency's search was reasonable.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Singh*, 574

F. Supp. 2d at 39 (finding the agency's search to be reasonable)*, quoting Valencia-Lucena v.*

*U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citations omitted).  While, "[t]he agency

bears the burden of showing that its search was calculated to uncover all relevant documents[,]

. . . [t]o meet its burden, the agency may submit affidavits or declarations that explain in

reasonable detail the scope and method of the agency's search."  *Id.* (internal quotations and

citations omitted).  "In the absence of contrary evidence, such affidavits or declarations are

sufficient to demonstrate an agency's compliance with FOIA."  *Id.*, *quoting Perry v. Block*, 684

F.2d 121, 126 (D.C. Cir. 1982).  Indeed, although the Agency has the burden of proof on the

adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of

good faith[.]'"  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 ($2^d$ Cir. 1994).

In processing requests from individuals seeking information about themselves, the

Criminal Division begins by searching its centralized records index, JUSTICE/CRM-001

(Central Criminal Division Index File and Associated Records).  Roberts Decl. ¶ 9.

When a search of this Central Index reflects responsive or potentially responsive records,

a search request is sent to the section identified as having custody of the records.  In this

instance, a search of the JUSTICE/CRM-001 system revealed six separate indexes

located in the Federal Records Center.  Id.  These indexes were ordered and processed.

Id.

In addition, the Criminal Division also affords requesters the opportunity to designate specific Privacy Act systems of records to be searched by means of a form listing the Division's systems of records and a short description of the nature of records maintained in each and allowing requesters to designate specific systems to be searched merely by placing a check mark adjacent to the system description. Id. ¶ 10. Here, the Plaintiff requested that searches be undertaken of the following Privacy Act systems: JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records); JUSTICE/CRM-003 (File of Names Checked to Determine if those Individuals have been the Subject of an Electronic Surveillance); JUSTICE/CRM-004 (General Litigation and Legal Advice Section); JUSTICE/CRM-012 (Organized Crime and Racketeering Section); JUSTICE/CRM-017 (Registration and Propaganda Files Under the Foreign Agents Registration Act of 1938, as amended); JUSTICE/CRM-019 (Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions); JUSTICE/CRM-021 (The Stocks and Bonds Intelligence Control Card File System); JUSTICE/CRM-022 (Witness Immunity Records); JUSTICE/CRM-024 (Freedom of Information/Privacy Act Records); JUSTICE/CRM-025 (Tax Disclosure Index File and Associated Records); and JUSTICE/CRM -008 (Name Card File on Department of Justice Personnel Authorized to have Access to Classified Files of the Department of Justice). Exhibit 1, page 2.

Pursuant to long-standing FOIA/PA Unit search procedures, a search sheet with a copy of the Plaintiff's request is transmitted to all sections that may have responsive records. Roberts Decl. ¶ 11. A copy of the "Privacy Act Identification and Request

Form" which Plaintiff had completed was forwarded with the search sheets. Exhibit 1.

Designated personnel employed in the pertinent sections undertake a search for

responsive materials and report the results by means of individual, signed forms to the

Criminal Division FOIA/PA Unit. Roberts Decl. ¶ 11. Searches are undertaken in the

same manner as if the Criminal Division were seeking the information for its own official

purposes. Id. By this means, the Criminal Division aims to ensure that its searches fully

meet the criteria established under the FOIA and the PA and interpretative decisional

law.[3] Id.

The Deputy Chief of Litigation of the FOIA/PA Unit in the Office of

Enforcement Operations of the Criminal Division of the United States Department of

Justice personally reviewed all of the original, signed search responses in this case, and

verified that all of the Criminal Division's Privacy Act systems of records designated by

the Plaintiff were searched. Roberts Decl. ¶ 12. As discussed supra, six indexes were

located in JUSTICE/CRM-001. Id. Additionally, records were located in

JUSTICE/CRM-019, JUSTICE/CRM-022, and JUSTICE/CRM-024. Id.

A total of 16 records were located and processed. Id. ¶ 13. Items 1-5 and

subsequently Items 12-14 were released in full. Items 6-11 were released in part. Id.

Items 15-16 were withheld in full. Id. Material was withheld pursuant to Exemptions 3,

5, 6, 7(C) and 7(D) of the FOIA (5 U.S.C. § 552(b)(3), (5), (6), 7(C) & 7(D)). Id.

**c. DOJ properly applied the relevant FOIA exemptions.**

---

[3]Unlike the Federal Bureau of Investigation or the Federal Bureau of Prisons, the Criminal
Division assigns no special identification numbers to individuals. Nor does it maintain files
based on social security numbers. It also does not maintain any field offices outside the
Washington, D.C. area. Finally, unlike certain other law enforcement components, the
Criminal Division maintains no separate "see reference" or "cross-reference" files requiring
separate searches.

The Agency properly withheld certain records and portions of records based upon applicable FOIA exemptions.

## 1.  The Agency properly invoked Exemption 3.

FOIA Exemption 3 permits the withholding of information specifically exempted from disclosure by another statute, provided that the statute (A) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).  Title III of the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510-2521 ("Title III") provides a comprehensive statutory scheme regulating both electronic surveillance as an investigative tool, as well as the disclosure of information obtained through such surveillance.  Title III imposes clear restraints on the use and disclosure of intercepted communications.  Title III expressly authorizes the recovery of civil damages by individuals whose communications have been disclosed in violation of this statute.  Since "Title III clearly identifies intercepted communications as the subject of its disclosure limitations" it "falls squarely within the scope of subsection (B)'s second prong, as a statute referring to 'particular types of matters to be withheld'" and thus constitutes a valid statutory basis for non-disclosure under Exemption (b)(3)(B).  *Public Citizen, Inc. v. Mineta*, 444 F.Supp. 2d 12, 16 (D.C.Cir. 2006); *Lam Lek Chong v. U.S. Drug Enforcement Administration*, 929 F.2d 729, 732-733 (D.C. Cir. 1991).

Pursuant to Exemption 3 and Title III, the Criminal Division's FOIA/PA Unit withheld:

▸  From Item 6 - seven paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions;

▸  From Item 7 - eight paragraphs of information concerning the contents of

intercepted communications, including direct quotes from these interceptions; and

▶    From Item 8 - six paragraphs of information concerning the contents of

intercepted communications, including direct quotes from these interceptions.

Roberts Decl. ¶ 16.

The FOIA/PA Unit determined that releasing information concerning the contents

of intercepted communications or information derived therefrom would violate the

disclosure prohibitions of Title III and, therefore, withheld this information pursuant to

Exemption 3.[4]  Id. ¶ 17.

### 2.    The Agency properly invoked Exemption 5.

Exemption 5 of the FOIA exempts from disclosure "inter-agency or intra-agency

memoranda or letters which would not be available by law to a party other than an agency in

litigation with the agency."  5 U.S.C. § 552(b)(5).  The Supreme Court has interpreted

Exemption 5 as allowing an agency to withhold from the public documents which a private party

could not discover in litigation with the agency.  *U.S. v. Weber Aircraft Corp.*, 465 U.S. 792, 799

(1984); *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

Exemption 5 incorporates privileges that the government enjoys under the relevant statutory and

case law in the pretrial discovery context.  *Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 26

(1983).  Agency documents that are not routinely discoverable in civil litigation are exempted

from disclosure under Exemption 5.  *Id.* at 27.  Accordingly, Exemption 5 allows an agency to

invoke civil discovery privileges, including the attorney-client privilege, attorney work-product

privilege, and the executive deliberative process privilege, to justify the withholding of

documents that are responsive to a FOIA request. *Coastal States Gas Corp. v. Dep't of Energy*,

---

[4]Additionally, all of these paragraphs also qualify for protection under Exemption 5 and are
included in the descriptions of material withheld pursuant to that exemption.

617 F.2d 854, 862 (D.C. Cir. 1980).

Pursuant to Exemption 5, the Criminal Division's FOIA/PA Unit withheld:

‣ From Item 6 - one paragraph from a memorandum, prepared by Division attorneys, recommending that authorization be granted to apply for an order for continued interception of oral communications, and seven paragraphs, also prepared by Division attorneys, establishing probable cause for the interceptions;

‣ From Item 7 - one paragraph from a memorandum, prepared by Division attorneys, recommending that authorization be granted to apply for an order for continued interception of oral communications and nine paragraphs, also prepared by Division attorneys, establishing probable cause for the interceptions; and

‣ From Item 8 - one paragraph from a memorandum, prepared by Division attorneys, recommending that authorization be granted to apply for an order for continued interception of oral communications and six paragraphs, also prepared by Division attorneys, establishing probable cause for the interceptions.

‣ Item 15 - withheld in full.  This is a one-page cover memorandum dated August 11, 1982, that is attached to Item 16 which is a prosecution memorandum also dated August 11, 1982.  The cover memorandum provides a few statements of analysis regarding the prosecution memorandum.

‣ Item 16 - withheld in full.  This document is a 12-page prosecution memorandum prepared on August 11, 1982.  This memorandum identifies the defendants, discusses the proposed charges, summarizes the case, and provides a statement of the law and a statement of the facts including proposed testimony and the anticipated defenses.

Roberts Decl. ¶ 18.

### A. Attorney Work-Product

It is well settled that Exemption 5 was intended to encompass the attorney work-product doctrine. Announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work-product doctrine is codified in the Federal Rules of Civil Procedure, which provide:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for another party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3). Under FOIA, work-product materials are not considered to be routinely available in litigation because they can only be released under Rule 26(b)(3) upon showings of substantial need and undue harm by the party seeking discovery. *Grolier*, 462 U.S. at 27.

The records withheld under the attorney work-product privilege of Exception 5 set forth the attorneys' thoughts, impressions, evidence development, legal theory of the case, and facts and issues upon which an attorney could evaluate the case. Roberts Decl. ¶ 23. It is vital to effective law enforcement efforts that prosecutors are able to candidly commit such information to writing, free of the fear that their analytical processes, investigative strategies, and case evaluations will, at a later time, be made available to the public. Id. Plainly, decisions and analysis regarding requests for the authorization to apply for interception orders under 18 U.S.C. § 2518 constitute sensitive deliberations undertaken by Criminal Division attorneys and their superiors, and are matters in which it is vital to foster an atmosphere in which opinions, analyses and recommendations can be freely exchanged. Id.

10

Inasmuch as the attorney work-product privilege incorporated in FOIA

Exemption 5 protects both factual work-product and analytical work-product from

disclosure, there are no non-exempt portions of these paragraphs to be segregated out and

disclosed.  *See, e.g,. Croskey v. U.S. Office of Special Counsel*, 132 F.3d 1480 (D.C. Cir.

1997).  Public release of the information in these paragraphs would inhibit the candid,

internal discussion essential for efficient and proper litigation preparation.  Id. ¶ 25.

Similarly, disclosure would provide insight onto the agency's general strategic and

tactical approach to prosecuting cases and would consequently harm the very adversarial

process which Exemption 5 is designed to protect.  Id.

### B.  Deliberative Process

To withhold a responsive document under the deliberative process privilege, the agency

must demonstrate that the document is "both predecisional and deliberative."  *Mapother v. Dep't

of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  A communication is predecisional if "it was

generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-

and-take of the consultative process."  *Coastal State*s, 617 F.2d at 866.  The privilege "covers

recommendations, draft documents, proposals, suggestions, and other subjective documents

which reflect the personal opinions of the writer rather than the policy of the agency."  *Id.*

The deliberative process privilege reflects Congress's judgment that public disclosure of

predecisional, deliberative documents would inhibit "the full and frank exchange of ideas on

legal policy matters" within an agency.  *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566

F.2d 242, 256 (D.C. Cir. 1977).  The Supreme Court has commented that, "[h]uman experience

teaches that those who expect public dissemination of their remarks may well temper candor

with a concern for appearances and for their own interests to the detriment of the decision-

making process." *United States v. Nixon*, 418 U.S. 683, 705 (1974).

The records described above constitute "inter-agency or intra-agency" memoranda and accordingly meet Exemption 5's threshold requirement. The Division's FOIA/PA Unit withheld Items 6-8 in part and Items 15-16 in full, pursuant to the attorney work-product privilege of Exemption 5. Additionally, these materials also qualify for protection under the deliberative process privilege. The sections of the documents marked as Items 6-8 which the Division's FOIA/PA Unit withheld under Exemption 5 are both pre-decisional and deliberative. This information was prepared by Division attorneys as part of the deliberative process prior to making a recommendation to the Assistant Attorney General of the Criminal Division (the Department official with delegated authority to authorize applications for wiretaps). Roberts Decl. ¶ 28. These memoranda preceded the final decision of whether to authorize the application for continued wiretaps, and express opinions and provide recommendations relevant to the final decision. Id.

Items 5, 8, and 11 set forth Division attorneys' thoughts, opinions, candid discussions, and recommendations concerning the need for continued interception of oral communications. Id. ¶ 29.The fear that such information would, at a later time, be made available to the public would inhibit candor and diminish the overall quality of the decisional process. Factual information in these items is exempt in its entirety pursuant to the attorney work-product aspect of Exemption 5.

The withheld Items marked 15 and 16 also fully fall within Exemption (b)(5's) deliberative process materials. These items include a cover memorandum and the prosecutive memorandum dated August 11, 1982. Roberts Decl. ¶ 31. These items

contain crucial elements of the deliberations in making key decisions in prosecuting the case.  Id.  The documents are withheld under both the deliberative process privilege and the attorney work-product privilege.  Id.  These documents were prepared in advance of trial and reveal the attorney's thought processes and litigation strategy.  Id.  Disclosure of these types of memoranda would harm the adversarial process that Exemption (b)(5) seeks to protect.[5]  Id.

### 3.    The Agency properly invoked FOIA Exemptions 6 and 7(C).

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

The Supreme Court has found that "[i]ncorporated in the 'clearly unwarranted' language is the requirement for . . . [a] 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'"  *Lepelletier*, 164 F.3d at 46, *citing U.S. Dep't of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992) (citations omitted).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public

---

[5] These two items, which were withheld in full:  do not fall within the timeframe of 1990-2002; do not mention wiretaps or evidence obtained from wiretaps; and are not within the scope of Plaintiff's request or lawsuit.

interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46, *quoting FLRA*, 510 U.S. at 497; *see also Reporters Comm.*, 489 U.S. at 773.

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). See also 5 U.S.C. § 552a (j)(2) (Privacy Act). The Supreme Court affirmed the broad scope of Exemption 7(C) in *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004). Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., Reporters Comm.*, 489 U.S. at 776-780.

In interpreting this exemption, courts employ a balancing test weighing the privacy interests of the affected individuals against the public interest in disclosure of the information. *See, e.g., Oguaju v. United States*, 288 F.3d 448 (D.C. Cir. 2002); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice*, 475 F.3d 381, 366, (D.C. Cir. 2007) (citations omitted). This Plaintiff has failed

14

to do. It is the "interest of the general public, and not that of the private litigant" that the Court considers in this analysis. *Ditlow v. Schultz*, 517 F.2d 166, 171-72 (D.C. Cir. 1975). Notably, a prisoner's desire to obtain records to mount a collateral attack on his conviction is not a public interest that is recognized under exemption (b)(7)(C). *See Cano v. D.E.A.*, No. 04-935, 2006 WL 1441383, at *3 (D.C. Cir. May 24, 2006).

Pursuant to Exemptions 6 and 7(C), the Criminal Division's FOIA/PA Unit withheld:

▸    From Items 6, 6a, 6b - the name and address of a target of the application for interception of oral communications as well as the names of additional subjects of the criminal investigation;

▸    From Items 7,7a, 7b - the name and address of the target of the application for interception of oral communications, as well as the names of additional subjects of the criminal investigation;

▸    From Item 8, 8a, 8b - the name and address of the target of the application for interception of oral communications, as well as the names of additional subjects of the criminal investigation;

▸    From Item 9 - the name and address of a target of the application for interception of oral communications, as well as the names of additional subjects of the criminal investigation;

▸    From Item 10 - the name and address of a target of the application for interception of oral communications, as well as the names of additional subjects of the criminal investigation; and

▸    From Item 11 - the name and address of a target of the application for interception

of wire communications, as well as the names of additional subjects of the

criminal drug investigation;

Roberts Decl. ¶ 35.  The individuals whose identities were withheld were not the

requester.  Id.

The items referenced above were compiled in connection with a criminal

investigation into violations of federal law involving racketeering activity, wire fraud,

money laundering, loan sharking, extortion, obstruction of justice, and aiding and

abetting, in violation of 18 U.S.C. §§ 2, 892, 893, 894, 1343, 1503, 1951, 1956, 1962,

and 1963; securities fraud, in violation of 15 U.S.C. § 78; and embezzling funds from a

labor organization, in violation of 29 U.S.C. § 501(c); and, as such, meet the threshold

requirement of FOIA Exemption 7 of "records or information compiled for law

enforcement purposes."  Id. ¶ 36.  In this case, the individuals whose identities have been

protected were either the subjects of the criminal investigation, the targets of the

applications for interception of communications, or other individuals referenced in

conjunction with the investigation and the intercepted communications.  Id. ¶ 37.  *See*

*Russell v. F.B.I.*, 2004 WL 5574164, at *5 ("the names and identities of individuals of

investigatory interest to law enforcement agencies and those merely mentioned in law

enforcement files have been consistently protected from disclosure"); *Ray v. F.B.I.*, 441

F. Supp. 2d 27, 35 (D.C. Cir. 2006) ("Exemption 7(C) recognizes that the stigma of being

associated with a law enforcement investigation affords broad privacy rights to those who

are connected in any way with such an investigation . . . ."); *Blanton v. U.S. Dep't of*

*Justice*, 63 F. Supp. 2d, 35, 45 (D.C. Cir. 1999) ("The privacy interests of third parties

mentioned in law enforcement files are substantial, while '[t]he public interest in

16

disclosure [of third-party identities] is not just less substantial, it is insubstantial.'"

(*quoting SafeCard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1205 (D.C.Cir. 1991)).

On the other hand, revealing such information is unlikely to add to the public's understanding of how an agency works or how well it performs its statutory duties.[6]  On balance, the FOIA/PA Unit determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest, which would be served by its release.  Id.  Such disclosure would be "clearly unwarranted" pursuant to 5 U.S.C. § 552(b)(6).  Since this is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" pursuant to 5 U.S.C. § 552(b)(7)(C).

The initial response also made excisions pursuant to Exemptions (b)(6) and (b)(7)(C) to Items 12-14 to remove the initials and names of Criminal Division employees.  Id. ¶ 40.  After reviewing these excisions, it was determined that the documents could be released in full.  Id. ¶ 40.

### 4. The Agency properly invoked FOIA Exemption 7(D).

Exemption 7(D) permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [which] could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the

---

[6]Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose of the FOIA.  That purpose is not fostered, however, by disclosure of information about private citizens that reveals little or nothing about an agency's own conduct.  *See Reporters Comm.,* 489 U.S. at 773.

course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.  5 U.S.C. § 552(b)(7)(D).

The purpose of Exemption 7(D) "is to keep open the Government's channels of confidential information."  *Birch v. United States Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).  Successful law enforcement investigations depend on information provided by individuals who may be exposed to relentless harassment and possible harm if their identities and the information they provided are revealed.  *Gula v. Meese*, 699 F. Supp. 956, 960 (D.D. Cir. 1988); *Duffin v. Carlson*, 636 F.2d 709, 712-13 (D.C. Cir. 1980).  Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would reveal the source's identity.  *See Stone v. Defense Investigative Serv.*, 816 F. Supp. 782, 788 (D.C. Cir. 1993) (protecting information that "was 'so singular that to release it would likely identify the individual, particularly to a knowledgeable party'").  Additionally, in order to prevent indirect source identification, even the name of a third party who is not a confidential source, but who acted as an intermediary for the source in his/her communications with the agency, can be withheld.  *Birch*, 803 F.2d at 1212.  Moreover, to protect the free flow of information from confidential sources, all information provided by a confidential source is protected from disclosure under the second prong of Exemption 7(D), even if the information is not source-identifying.  *Irons v. FBI*, 880 F.2d 1446, 1448 (1st Cir. 1989); *Duffin*, 636 F.2d at 712-13.  In order to invoke Exemption 7(D), an agency must show either that a source provided information to it under express assurances of confidentiality or that circumstances support an inference of confidentiality.  *United*

*States Department of Justice v. Landano*, 508 U.S. 165 (1993).

> Pursuant to Exemption 7(D), the Division's FOIA/PA Unit withheld,

▸     From Items 6, 7, 8 - information which would identify confidential

> sources as well as the specific information or assistance which this source
>
> provided to federal investigators.

Roberts Decl. ¶ 44.   These items were compiled in connection with criminal law

enforcement proceedings and thus meet the threshold requirement of Exemption (b)(7).

Id. ¶ 45.

Based upon an assessment of the facts and circumstances, the Criminal Division's

FOIA/PA Unit determined that the informant's cooperation was provided under circumstances

where an assurance of confidentiality could reasonably be inferred.  *U.S. Dep't of Justice v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989).  As noted, the nature of the

crimes being investigated included racketeering activity, wire fraud, money laundering, loan

sharking, extortion, obstruction of justice, aiding and abetting, securities fraud, and embezzling

funds from a labor organization.  The sources are not government agencies nor were the

cooperating individuals law enforcement agents.  Id.  Consequently, based upon the seriousness

of the offenses investigated and the source's information, the Agency determined that the

information was provided under circumstances in which a promise of confidentiality could be

inferred.  Id.  As disclosure of this individual's identity, or information that could reasonably be

expected to lead to their identification, would also constitute a clearly unwarranted invasion of

personal privacy, this individual's identity has also been withheld under FOIA Exemptions 6 and

7(C).

### 5.  All reasonably segregable material has been released to plaintiff

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); *Mead Data Central v. U.S. Dep't of the Air Force*, 566, F.2d 242, 260 (D.C.

Cir. 1977).  In order to demonstrate that all reasonably segregable material has been released, all

that is required is that the government show "with 'reasonable specificity'" why a document

cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-

79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and

resources to the separation of disjointed words, phrases, or even sentences which taken

separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261,

n.55.

     All non-exempt information has been segregated and released to Plaintiff through

the Criminal Division's response of June 16, 2008.  Roberts Decl. ¶ 48.  These documents

included Items 6-14.  Id.  Upon further review, Items 12-14 have been released to

Plaintiff in full.  Id.  The documents released in part include information regarding the

authorization to intercept oral communications.  Id.  The documents that have been

withheld in full have been reviewed and the bases for withholding the documents are

explained supra.  Id.  The documents withheld in full do not relate to Plaintiff's request

for information regarding wiretaps or other interception nor do they discuss evidence

obtained through wiretaps or other intercepts.  Id.

### IV. Conclusion

For the foregoing reasons, summary judgment in Defendants' favor is appropriate.  A

proposed order is attached.

Dated:  May 7, 2009
           Washington, DC

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
TERRI L. ROMÁN
Special Assistant United States Attorney
555 Fourth St., N.W.
Room E4823
Washington, D.C. 20530
(202) 616-0739
Terri.Roman@usdoj.gov

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ALLEN WOLFSON,                      )
Reg. No.03430-018                   )
FMC Butner 2H                       )
P.O. Box  1600                      )
Butner, NC  27509                   )
                                    )
                  Plaintiff,        )
                                    )
            v.                      )        Civil Action No.:  09-CV-0304 (ESH)
                                    )
UNITED STATES OF AMERICA,           )
                                    )
UNITED STATES DEPARTMENT            )
OF JUSTICE OFFICE OF                )
INFORMATION AND PRIVACY             )
                                    )
                  Defendants.       )
_____)

## ORDER

Upon consideration of Defendants' Motion for Summary Judgment it is hereby:

ORDERED that Defendants' Motion is GRANTED;

ORDERED that the Complaint is hereby DISMISSED.


SIGNED:

                        _____
                        United States District Judge

Copies to:

TERRI L. ROMÁN                                  ALLEN WOLFSON
Special Assistant United States Attorney        Reg. No.03430-018
555 Fourth St., N.W., Room E4823                FMC Butner
Washington, D.C. 20530                          P.O. Box 1600
                                                Butner, NC  27509

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLEN WOLFSON,<br>Reg. No.03430-018<br>FMC Butner 2H<br>P.O. Box 1600<br>Butner, NC 27509<br><br>                  Plaintiff,<br><br>           v.<br><br>UNITED STATES OF AMERICA,<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE OFFICE OF<br>INFORMATION AND PRIVACY<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.: 09-CV-0304 (ESH) |

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 7th day of May 2009, a true and correct copy of the

above Motion for Summary Judgment was sent to the pro se Plaintiff via U.S. mail at the address

below.

                                                 /s/
                                  TERRI L. ROMÁN
                                  Special Assistant United States Attorney
                                  555 Fourth St., N.W.
                                  Room E4823
                                  Washington, D.C. 20530
                                  (202) 616-0739
                                  Terri.Roman@usdoj.gov

ALLEN WOLFSON
Reg. No.03430-018
FMC Butner 2H
P.O. Box 1600
Butner, NC 27509