# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLEN WOLFSON,<br><br>                              Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>                              Defendants. | Civil Action No. 09-0304 (ESH) |

## MEMORANDUM OPINION

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ").[1]  This matter is before the Court on the DOJ's motion for summary judgment and plaintiff's motion to dismiss.  For the reasons discussed herein, the Court will grant summary judgment for the DOJ.

## I.  BACKGROUND

On or about August 25, 2005, plaintiff submitted a Privacy Act Identification and Request Form to the DOJ's FOIA/PA Unit, Criminal Division, in Washington, D.C.  Complaint ("Compl.") at 3; Defendants' Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem."), Declaration of Pamela A. Roberts ("Roberts Decl."), Exhibit ("Ex.") 1 (Privacy Act Identification and Request Form).  He requested that the agency search the following systems of records for information about himself:

> JUSTICE/CRM-001   Central Criminal Division Index File and
>                              Associated Records

---

[1]      Because the FOIA applies only to federal government agencies, *see* 5 U.S.C. § 552(f)(1), the United States Department of Justice is the proper party defendant.

| | |
|---|---|
| JUSTICE/CRM-003 | File of Names Checked to Determine if Those Individuals have been the Subject of an Electronic Surveillance |
| JUSTICE/CRM-004 | General Litigation and Legal Advice Section, Criminal Division, Central Index File and Associated Records |
| JUSTICE/CRM-008 | Name Card File on Department of Justice Personnel Authorized to have Access to Classified Files of the Department of Justice |
| JUSTICE/CRM-012 | Organized Crime and Racketeering Section, General Index File and Associated Records |
| JUSTICE/CRM-017 | Registration and Propaganda Files Under the Foreign Agents Registration Act of 1938, as amended |
| JUSTICE/CRM-019 | Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions |
| JUSTICE/CRM-021 | The Stocks and Bonds Intelligence Control Card File System |
| JUSTICE/CRM-022 | Witness Immunity Records |
| JUSTICE/CRM-024 | Freedom of Information/Privacy Act Records |
| JUSTICE/CRM-025 | Tax Disclosure Index File and Associated Records |

*See id.*, Ex. 1.  Through this FOIA request, plaintiff sought " all of the wire taps that were done illegally against him," operating under the assumption that an Assistant United States Attorney illegally obtained wiretaps "solely to keep tabbs [sic] of plaintiff[.]"  Compl. at 3.  Through such surveillance, plaintiff felt "that the government invaded his privacy and should be forced to turn over what ever they have acquired."  *Id.*

Criminal Division staff located 16 documents responsive to plaintiff's request and processed them under the FOIA.  Roberts Decl., Ex. 3 (June 16, 2008 letter from R.Y. Kim, Chief, Freedom of Information/Privacy Act Unit, Criminal Division, regarding Request No. CRM-200500908P).  Of these 16 documents, the DOJ withheld two documents in full (Items 15-

16), released eight documents in full (Items 1-5, 12-14), and released six documents in part (Items 6-11), after redacting information under Exemptions 3, 5, 6, 7(C), and 7(D) of the FOIA.[2] Roberts Decl. ¶ 13.  This determination was upheld on administrative appeal.  *Id.*, Ex. 5 (September 23, 2008 letter from J.G. McLeod, Associate Director, Office of Information and Privacy, DOJ).

In this action, plaintiff demands the disclosure in full of all the information he has requested in order to "prove that he did not commit any crimes from [1]990 until 2002" and to "prove that the government has been illegally spying on [him]."  Compl. at 3.  In addition, he "wants to be financially compensated for the illegal activity of the government in listening to plaintiff's telephone conversation[s]" in the amount of "1000 dollars a day for every day his phones were tapped."  *Id.* at 4.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d

---

[2]       One document originated with the Federal Bureau of Investigation ("FBI"), and Criminal Division staff referred it to the FBI for processing and direct response to plaintiff. Roberts Decl. ¶ 6.

453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. United States Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted).  In a FOIA case, the Court may grant summary judgment based on the information provided in an agency's supporting affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## B.  The DOJ's Search for Responsive Records

An agency's search is adequate if its methods are reasonably calculated to locate records responsive to a FOIA request, *see Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), and an agency is not obligated to expand the scope of its search or to search all of its systems of records when it has searched the systems of records most likely to contain responsive records.  *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (stating that an agency generally need not search every records system as long as it conducts "a reasonable search tailored to the nature of a particular request") (citing *Oglesby*, 920

F.2d at 68).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)).

A search for records responsive to a person's request for information about himself to the Criminal Division begins "by searching its centralized records index, JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records)."  Roberts Decl. ¶ 9.  If this search yields responsive or potentially responsive records, staff sends "a search request . . . to the section identified as having custody of the records for such records."  *Id.*  A requester also may designate specific Privacy Act systems of records to be searched, as plaintiff has done.  *Id.* ¶ 10; *see id.*, Ex. 1.  "Pursuant to long-standing FOIA/PA Unit search procedures, a search sheet with a copy of the request is transmitted to all sections that may have responsive records."  *Id.* ¶ 11. Designated personnel in each section "undertake a search for responsive materials and report the results by means of individual, signed forms to the Criminal Division FOIA/PA Unit."  *Id.*

In this case, a search of the Criminal Division's centralized records index, JUSTICE/CRM-001, using plaintiff's name as a search term, "revealed six separate indexes located in the Federal Records Center."  Notice of Filing Supplemental Declaration, Supplemental Declaration of Rena Y. Kim ("Kim Decl.") ¶ 6.  Staff determined that "potentially responsive records may exist [in] the following Criminal Division Sections: the Appellate, the Fraud and Public Integrity Sections, as well as the FOIA/PA Unit."  *Id.*

Also using plaintiff's name (or variants of his name) as a search term, manual and electronic searches of records maintained by the Appellate and Public Integrity Sections yielded

no responsive records.  Kim Decl. ¶¶ 7-8.  Likewise, searches of JUSTICE/CRM-003,

JUSTICE/CRM-004, JUSTICE/CRM-012, JUSTICE/CRM-017, JUSTICE/CRM-021, and

JUSTICE/CRM-025, yielded no responsive records.  *See id.* ¶¶ 11-12, 14-16.  DOJ staff did not

search JUSTICE/CRM-008.  *Id.* ¶ 17.  This system of records "contains only records about

present and former [DOJ] personnel[,]" and plaintiff "gave no indication that he has ever been an

employee of the [DOJ]."  *Id.*  Criminal Division staff also requested that the Computer Crime

and Intellectual Property Section search its systems of records.  Kim Decl. ¶ 18.  Using "Allen Z.

Wolfson" as a search term, no responsive records were located.  *Id.*  Responsive records actually

were located in four systems of records: JUSTICE/CRM-001, JUSTICE/CRM-019,

JUSTICE/CRM-022, and JUSTICE/CRM-024, after having conducted electronic and manual

searches of each system using plaintiff's name as a search term.  Roberts Decl. ¶ 12; Kim Decl.

¶¶ 6, 11-13.  The declarant "personally reviewed all of the original, signed search responses in

this case, and . . . verified that all of the Criminal Division's Privacy Act systems of records

designated by the Plaintiff were searched."  Roberts Decl. ¶ 12.

    Without support, plaintiff asserts that the DOJ "did not fulfill its obli[ga]tion under the

FOIA . . . to demonstrate that its search was reasonably calculated to uncover all relevant

documents."  Objection to Motion for Summary Judgment ("Pl.'s Opp'n") at 3.  Because

"plaintiff use[d] the telephone extensively," he opines that there must be thousands of pages

missing" from the DOJ's release.  *Id.*

    Having reviewed defendant's declarations, the Court concludes that the DOJ's searches

were "reasonably calculated to uncover all relevant documents."  *Valencia-Lucena*, 180 F.3d at

325.  The declarations "are accorded a presumption of good faith, which cannot be rebutted by

6

purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.,* 926 F.2d at 1200 (internal quotation marks and citation omitted). The fact that the DOJ did not locate all of the records sought by plaintiff is not dispositive. An agency's search is not presumed unreasonable because it fails to find all the requested information. *See Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (the question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate"); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986). Furthermore, a requester's challenge requires that he present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg*, 705 F.2d at 1351-52. Plaintiff fails to meet this evidentiary burden.

### C. Exemptions

At issue in this case are eight documents, two of which the DOJ withheld in full (Items 15-16), and six of which it released in part (Items 6-11). Roberts Decl. ¶ 13.

### 1. Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute either . . . [requires withholding] in such a manner as to leave no discretion on the issue, or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). Under Exemption 3, the DOJ withholds from three documents (Items 6-8) particular "paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions." Roberts Decl. ¶ 16. Its declarant explains the agency's rationale as follows:

> Title III of the Omnibus Crime Control and Safe Street[s] Act of 1968, 18 U.S.C. §§ 2510-2521 ("Title III"), provides a comprehensive statutory scheme regulating both electronic surveillance as an investigative tool as well as the disclosure of information obtained through such surveillance.  Title III imposes clear restraints on the use and disclosure of intercepted communications [and] expressly authorizes the recovery of civil damages by individuals whose communications have been disclosed in violation of this statute.   Since Title III clearly identifies intercepted communications as the subject of its disclosure limitations[,] it falls squarely within the scope of subsection (B)'s second prong, as a statute referring to particular types of matters to be withheld[,] and thus constitutes a valid statutory basis for non-disclosure under Exemption [3].

*Id*. ¶ 15 (internal quotation marks and citation omitted).  Although plaintiff does not refer expressly to Exemption 3, he objects generally to the DOJ's decision to withhold any information pertaining to the wiretaps.  *See* Pl.'s Opp'n at 3.

The District of Columbia Circuit holds that "Title III falls squarely within the scope of [the second prong of 5 U.S.C. § 552(b)(3)(B)], as a statute referring to '*particular types of matters to be withheld*.'"  *Lam Lek Chong v. United States Drug Enforcement Admin*., 929 F.2d 729, 733 (D.C. Cir. 1991) (quoting 5 U.S.C. § 552(b)(3)(B)) (emphasis in original); *see Smith v. Dep't of Justice*, 251 F. 3d 1047, 1049 (D.C. Cir. 2001).  Accordingly, wiretapped recordings obtained pursuant to Title III ordinarily are exempt from disclosure under Exemption 3.  *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (finding that wiretapped recordings obtained pursuant to Title III  are exempt from disclosure under Exemption 3 if they have not entered the public domain); *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (concluding that, absent plaintiff's objection or a showing of public availability, Title III intercepts properly were withheld under Exemption 3); *Raulerson v. Ashcroft*, 271 F. Supp. 2d

17, 25 (D.D.C. 2002) (concluding that "the FBI validly applied Exemption 3 with regard to Title III's general prohibition on the release of intercepted information").

The Court concludes that the information described in the DOJ's supporting declaration as the contents of communications intercepted by means of a Title III wiretap has properly been is withheld under Exemption 3. *See, e.g., Willis v. Fed. Bureau of Investigation*, No. 98-5071, 1999 U.S. App. LEXIS 7354, at *1 (D.C. Cir. Mar. 19, 1999) (affirming grant of summary judgment as to the FBI's decision to withhold tapes obtained pursuant to Title III where appellant alleged, without supporting evidence or offering a reason to doubt the veracity of the FBI's affidavits, that the tapes were not obtained pursuant to Title III).

## 2. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

### Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predecisional, the agency need not identify a

specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. United States Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]").

A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). The deliberative process privilege is thought to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151. Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies, and avoids public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action. *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Materials may be withheld under Exemption 5 under both the deliberative process privilege and the attorney work product privilege. *See, e.g., Miller v. United States Dep't of Justice*, 562 F. Supp. 2d 82, 114-15 (D.D.C. 2008) (concluding that draft grand jury indictment, trial attorney certification and draft affidavit supporting a request for plaintiff's extradition were protected under Exemption 5 insofar as they reflected "predecisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies," and "such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [plaintiff's] criminal case" ); *Heggestad*, 182 F. Supp. 2d at 8-12 (concluding that prosecution memoranda prepared by attorneys to assist their superiors in

determining whether to authorize prosecution of the targets of a criminal investigation prior to the final decision to prosecute properly were withheld under Exemption 5).

Attorney Work Product Privilege

Attorney work product is among the types of material that is not available in discovery. *See*, *e.g.*, *Federal Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 27 (1983).  The attorney work product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation, *see Hickman v. Taylor*, 329 U.S. 495 (1947), and records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3); *see Miller v. United States Dep't of Justice*, 562 F. Supp. 2d 82, 115 (D.D.C. 2008) (documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [plaintiff's]" qualify as attorney work product under Exemption 5); *Heggestad*, 182 F. Supp. 2d at 8 (the attorney work product privilege "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories").

The DOJ asserts that information contained in Items 6-8 and 15-16 is exempt from disclosure under both the deliberative process privilege and the attorney work product privilege. Roberts Decl. ¶ 21.

Items 6-8

Items 6-8 are memoranda "prepared by [Criminal] Division attorneys [] recommending that authorization be granted to apply for an order for continued interception of oral communications" and additional information "establishing probable cause for the

11

interceptions[.]"  Roberts Decl. ¶ 19.  The declarant states that these memoranda "[were]

prepared . . . prior to making a recommendation to the Assistant Attorney General of the

Criminal Division (the Department official with delegated authority to authorize applications for

wiretaps)" and thus "preceded the final decision of whether to authorize the application for

continued wiretaps[.]"  *Id.* ¶ 28.  Further, the declarant states that the memoranda "express

opinions and provide recommendations relevant to the final decision," *id.*, insofar as  "decisions

and analysis regarding requests for the authorization to apply for interception orders under 18

U.S.C. § 2518 constitute sensitive deliberations undertaken by Criminal Division attorneys and

their superiors[.]"  Roberts Decl. ¶ 23.

The declarant further asserts that the withheld information is protected by the attorney

work product privilege because these documents or portions thereof "set forth the attorneys'

thoughts, impressions, evidence development, legal theory of the case, and facts and issues upon

which the attorney[s] could evaluate the case."  Roberts Decl. ¶ 23.  With respect to Item 8, the

declarant represents that "attorneys' thoughts, opinions, candid discussions, and

recommendations concerning the need for continued interception of oral communications" are set

forth therein.  *Id.* ¶ 29.

Items 15-16

Items 15 is described as "a one-page cover memo dated August 11, 1982, that is attached

to Item 14[,] a prosecution memo also dated August 11, 1982."[3]  Roberts Decl. ¶ 19.  The cover

memo "provides a few statements of analysis regarding the prosecution memo."  *Id*.  Item 16 is

described as "a 12-page prosecution memorandum prepared on August 11, 1982[, which]

---

[3]Item 14 was released in full.  Roberts Decl. ¶ 13.

identifies the defendants, discusses the proposed charges, summarizes the case, and provides a statement of the law and a statement of the facts including proposed testimony and the anticipated defenses." *Id*. These two documents, according to the declarant, "contain crucial elements of the deliberations in making key decisions in prosecuting the case [against plaintiff]." *Id*. ¶ 31. The declarant states that both documents "were prepared in advance of trial and reveal the attorney's thought processes and litigation strategy." *Id.* ¶ 31.

Based on the declarant's representations, which plaintiff has not challenged, the Court concurs that Items 6-8 and 15-16 "constitute 'inter-agency or intra-agency' memoranda" and thus "meet Exemption 5's threshold requirement." Roberts Decl. ¶ 20. All were prepared in advance of trial and in anticipation of litigation, and their release would reveal the attorneys' thought processes and litigation strategy and would reveal the agency's deliberations prior to the decision to seek authorization for continued monitoring of oral communications. In addition, the DOJ establishes that this information was prepared by attorneys in anticipation of a criminal prosecution. The Court concludes that the redacted portions of Items 6-8 and Items 15-16 in their entirety have properly been withheld under Exemption 5.

### 3.  Exemption 7[4]

#### a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S.

---

[4]Because the Court concludes that all the information withheld under Exemption 6 is properly withheld under Exemption 7(C), there is no need to consider the applicability of Exemption 6. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must

establish that the records at issue were compiled for law enforcement purposes and that the

material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*,

673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law

enforcement purposes, the "focus is on how and under what circumstances the requested files

were compiled, and whether the files sought relate to anything that can fairly be characterized as

an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir.

2002) (citations and internal quotations omitted).

Plaintiff's criminal history has been described as follows:

> Mr. Wolfson, working with certain other defendants named in the
> SEC's complaint, played a key role in a fraudulent scheme designed
> to artificially inflate the stock price of a corporation known as
> Freedom Surf, Inc.  Over the course of several months, Mr. Wolfson
> attempted to create the false appearance of market demand for the
> stock by using nominees under his control to call in ever-higher bid
> and ask prices for the stock.  In fact, the demand for the stock was
> generated by trading from accounts controlled by Mr. Wolfson.  After
> the price had been artificially inflated by these spurious trades, Mr.
> Wolfson delivered 25,000 shares to defendant Salomon Grey
> Financial Corporation, at a discount of 50% from the current bid
> price.  Salomon Grey then marked up the price of the shares and sold
> them to investors before the share price crashed.

> In a criminal action in the Southern District of New York, Mr.
> Wolfson pleaded guilty to criminal charges arising from this
> fraudulent scheme.  He admitted under oath in his criminal
> proceedings that he agreed to take steps to inflate the price of
> Freedom Surf stock.  According to his sworn statement in allocution,
> he agreed to raise the price of the stock in order to defraud investors
> and in order to enrich himself as well as others.

*Sec. & Exch. Comm'n v. Wolfson*, 249 Fed. App. 701, 702-03 (10th Cir. 2007).[5]

The DOJ represents that the responsive records "were compiled in connection with a criminal investigation into violations of federal law involving racketeering activity, wire fraud, money laundering, loan sharking, extortion, obstruction of justice, . . . aiding and abetting[,] . . . securities fraud, . . . and embezzling funds from a labor organization[.]"  Roberts Decl. ¶ 36. Plaintiff does not dispute that the relevant records were compiled in the course of a criminal investigation.

The Court concludes that the records at issue in this case are law enforcement records for purposes of Exemption 7.

b.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  "To determine whether Exemption 7(C) applies, [courts] 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'"  *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Davis*, 968 F.2d at 1282); *see Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

---

[5]Although the trial court found that plaintiff  "was competent at the time of his trial and guilty plea," it concluded after an evidentiary hearing that he since had become "incompetent to be sentenced and therefore [was] committed to the custody of the Attorney General for care and treatment pursuant to 18 U.S.C. § 4244 until such time as he has recovered so that he can be sentenced."  *United States v. Wolfson*, 616 F. Supp. 2d 398, 401 (S.D.N.Y. 2008).  Review of the criminal docket reveals that plaintiff has been deemed competent to be sentenced, and that he is to be transferred to New York for sentencing in the near future.  *See* Order, *United States v. Wolfson*, No. 02cr1588 (S.D.N.Y. filed Oct. 14, 2009).

Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Servs.*, 926 F. 2d at 1205. "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id*. at 1206; *see Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). If the asserted public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Boyd v. Criminal Div. of the United States Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)).

Under Exemption 7(C), the DOJ withholds from Items 6-11 the names and addresses of individuals who "either were the subjects of the criminal investigation, the targets of the applications for interception of communications, or other individuals referenced in conjunction with the investigation and intercepted communications." Roberts Decl. ¶ 37; *see id.* ¶ 35. "The individuals whose identifies were withheld . . . were not the [plaintiff]." *Id.* ¶ 35. The declarant asserts that these individuals "all maintain a substantial privacy interest in not being identified with a criminal law enforcement investigation." *Id.* ¶ 38. To release these individuals' identities

16

"as either the subjects of criminal investigations or being associated with such investigations can subject them to innuendo, embarrassment, and stigmatization or even harassment, retaliation and reprisals." *Id.*  Moreover, "revealing such information is unlikely to add to the public's understanding of how an agency works or how well it performs its statutory duties." *Id.* ¶ 39.

Plaintiff "is quite sure that the tapping of his phones [was] an invasion of his privacy and illegal surveillance by the government." Pl.'s Opp'n at 3-4.  He is under the mistaken impression that the privacy interest at issue in the Exemption 7(C) analysis is his own.  In his view, there is no need to protect plaintiff's privacy interest because he is the requester of "all information regarding the tapping of his conversations." *Id.* at 3.  Exemption 7(C), however, focuses on the privacy interests of third parties, who, in this case, were subjects of the criminal investigation, targets of the wiretap applications, or otherwise were mentioned in connection with the wiretaps. Plaintiff fails to articulate a public interest of such significance that it outweighs the privacy interests of these third parties.  The Court concludes that the DOJ properly has redacted the names and addresses of the third parties described in the supporting declaration.

### c. Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  A confidential source may be an individual, such as a private citizen or paid informant, or it may be a state, local or foreign law enforcement agency. *Lesar v. Dep't of*

*Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980).  There is no assumption that a source is confidential

for purposes of Exemption 7(D) solely because the source provides information to a law

enforcement agency in the course of a criminal investigation.  *See United States Dep't of Justice*

*v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality is determined on a

case-by-case basis.  *Id*. at 179-80.  "A source is confidential within the meaning of 7(D) if the

source provided information under an express assurance of confidentiality or in circumstances

from which such an assurance could reasonably be inferred."  *Williams v. Fed. Bureau of*

*Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

Under Exemption 7(D), the DOJ withholds from Items 6-8 "information which would

identify confidential sources as well as the specific information or assistance which this source

provided to federal investigators."  Roberts Decl. ¶ 44.  It appears that there was only one

confidential source and that he or she was neither a government agency nor a cooperating

witness.  *See id.* ¶ 46.  The declarant asserts that "the informant's cooperation was provided

under circumstances where an assurance of confidentiality could reasonably be inferred[,]" based

on "the seriousness of the offenses and the source's information."  *Id.*  "[T]he nature of the

crimes being investigated included racketeering activity, wire fraud, money laundering, loan

sharking, extortion, obstruction of justice, aiding and abetting, securities fraud, and embezzling

funds from a labor organization."  *Id*.

The nature of the crime investigated and informant's relation to it are the most important

factors in determining whether implied confidentiality exists.  *Landano*, 508 U.S. at 179-80;

*Quiñon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1231 (D.C. Cir. 1996); *Coleman v. Fed.*

*Bureau of Investigation*, 13 F. Supp. 2d 75, 82 (D.D.C. 1998) (plaintiff's conviction "of

numerous violent crimes" including murder, rape and kidnaping, as well as "the relation of the witnesses thereto is precisely the type that the implied confidentiality exemption expressed in *Landano* is designed to encompass").  In determining whether the source provided information under an implied assurance of confidentiality, the Court considers "whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000).  The question has been answered in the affirmative with respect to "the violence and danger that accompany the cocaine trade," *id.*, gang-related murder, *Landano*, 508 U.S. at 179, and other violent acts committed in retaliation for witnesses' cooperation with law enforcement. *See Shores v. Fed. Bureau of Investigation*, No. 98-2728, 2002 WL 230756, at *4 (D.D.C. Feb. 2, 2002) (withholding identities and identifying information of three cooperating witnesses with knowledge of the murder of which plaintiff was convicted, where plaintiff "subsequently attempted to procure the murder of a family member of one of the witnesses").

Plaintiff counters that the government already has disclosed the identity of the person "who originally recieved [sic] the permission [to] tap plaintiff's telephone," and because this permission allegedly "was granted on false information," he argues that the DOJ cannot now establish that any information properly is withheld under either an express or implied assurance of confidentiality.  Pl.'s Opp'n at 4.  Plaintiff presumes that the requester of the wiretaps is the source whose identity the DOJ is protecting.  *See id.*  Further, he appears to argue that he is innocent of the crimes of which he has been convicted, *id.*, such that the nature of the crimes should not be a factor in determining whether confidentiality can be reasonably implied.  He offers nothing, however, to undermine the presumption of veracity afforded to an agency's

supporting declaration.

Albeit on facts more compelling than those presented here, courts have concluded that the investigation of crimes such as racketeering, loan sharking and extortion are circumstances under which sources have provided information under an implied assurance of confidentiality.  *See, e.g., Amuso v. United States Dep't of Justice*, 600 F. Supp. 2d 78, 99-100 (D.D.C. 2009) (interviewees who provided information to the FBI did so under an implied assurance of confidentiality based on the violent nature of plaintiff's crimes, which included murder, extortion and labor racketeering, and the fact that the interviewees reported on the activities of organized crime families); *McQueen v. United States*, 264 F. Supp. 2d 502, 522-24 (S.D. Tex. 2003) (documents identifying a confidential informant who provided information pertaining to the crimes of willfully attempting to evade federal diesel fuel excise taxes and conspiracy to commit such an offense are entitled to a "categorical presumption of implied confidentiality," or, alternatively, holding that the requester's prior threats and ability to harm witnesses justified a finding of implied assurances of confidentiality); *Delviscovo v. Fed. Bureau of Investigation*, 903 F. Supp. 1, 3 (D.D.C. 1995) ("[a] major racketeering investigation focusing on groups and individuals involved in extortion, gambling, loan sharking, narcotics trafficking and interstate transportation of stolen property gives rise to . . . an inference [of confidentiality] without the need for elaboration").  The Court concludes that the DOJ properly has redacted from Items 6-8 information which would identify a confidential source.

### D.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions

are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Plaintiff asserts that it is impossible for the DOJ to have released all segregable material to him, apparently on the belief that he is entitled to disclosure in full of all information related to his criminal trial.  Pl.'s Opp'n at 4-5.  The Court has reviewed the DOJ's declarations and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt."  *Vaughn v. Rosen*, 484 F.2d at 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

### III.  CONCLUSION

The DOJ has conducted an adequate search for materials responsive to plaintiff's FOIA request and properly has withheld information under Exemptions 3, 5, 7(C), and 7(D).  The agency has established that there is no genuine issue of material fact as to its compliance with the FOIA and its entitlement to judgment as a matter of law.  Accordingly, the Court will grant the DOJ's motion for summary judgment and will deny plaintiff's motion to dismiss as moot.  An Order accompanies this Memorandum Opinion.

_____/s/_____<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

DATE:  November 30, 2009